UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JASON HILL,

                       Petitioner,

        v.

JOHN J. DONELLI,

                       Respondent.

9:05-CV-1245
(GLS/GHL)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| JASON HILL<br>Petitioner *pro se*<br>Washington County Jail<br>399 Broadway<br>Ft. Edward, New York 12828 | |
| HON. ANDREW M. CUOMO<br>Office of the Attorney General<br>State of New York<br>Counsel for Respondent<br>120 Broadway<br>New York, New York 10271 | ROBIN A. FORSHAW, ESQ.<br>Deputy Solicitor General |

GEORGE H. LOWE, United States Magistrate Judge

**REPORT-RECOMMENDATION**[1]

**I.    THE HABEAS PETITION**

    On September 26, 2005, Petitioner Jason Hill, *pro se*, filed a petition under 28 U.S.C. §

---

[1] This action has been referred to the undersigned by District Court Judge Gary L. Sharpe for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

2254 for a writ of *habeas corpus*. He challenges the judgment entered on April 9, 2003, in Albany County Court convicting him, after a plea of guilty, of assault in the second degree (N.Y. Penal Law § 120.05(2)) and sentencing him to a determinate term of imprisonment of five years followed by five years of post-release supervision. (Dkt. No. 1.) Petitioner's conviction was affirmed by the Appellate Division, Third Department, and leave to appeal to the Court of Appeals was denied. *People v. Hill,* 794 N.Y.S.2d 690 (N.Y. App. Div. 2005); *leave denied* 5 N.Y.3d 763 (2005).

## II.  THE CLAIMS

Petitioner seeks *habeas* relief on the following grounds:

1. The trial court violated his right to due process[2] by increasing his bargained-for sentence without undertaking a sufficient inquiry. (Dkt. No. 1 at 5.)

2. The imposition of five years of post-release supervision was illegal because Petitioner was a first-time violent felony offender. (Dkt. No. 1 at 5.)

Respondent argues that (1) the Third Department reasonably applied clearly established federal law when it found that the trial court properly increased the bargained-for sentence; and (2) the claim that Petitioner's sentence was illegal is unexhausted and without merit. (Dkt. No. 6.)

## III.  THE RELEVANT FACTUAL BACKGROUND

On August 3, 2002, Petitioner hit a woman in the face with a beer bottle. (Appendix on Appeal ("A") at 2.) He then resisted arrest. (A3-A6.) The Grand Jury for the County of Albany

---

[2] The petition does not include the phrase "due process." However, this Court will assume, as Respondent did (Dkt. No. 6 at 12), that Petitioner's claim is based on the Due Process Clause.

issued a five count indictment charging Petitioner with four counts of assault in the second degree and one count of reckless endangerment. (A2-A6.)

On October 8, 2002, Petitioner pleaded guilty to one count of assault in the second degree in exchange for a determinate sentence of three years of imprisonment followed by five years of post-release supervision. (A9:12-A10:9.) Under the agreement, Petitioner promised to cooperate with the probation department and answer the department's questions truthfully, appear for sentencing on November 26, and "remain free of any new arrests." (A13:1-16.) The trial court cautioned Petitioner that if he violated the conditions of the plea agreement he "could receive a different sentence up to ... seven years determinate, plus five years post-release supervision." (A13:20-A14:11.)

Petitioner violated all three conditions of his plea agreement. First, in his pre-sentencing interview with the probation department, Petitioner stated that he pleaded guilty "because he would never have beaten the cop's statement at trial." (A22:21-24.) Second, Petitioner failed to appear for sentencing. (A23:7-8.) Third, in March 2003, Petitioner was arrested and charged with burglary in the second degree, stalking in the fourth degree, obstructing governmental administration in the second degree, and resisting arrest. (A25:14-24.) The woman who reported the burglary ("the complainant") told police that "I thought it was the father of one of my children, whose name is Jason Hill. Jason lived with me until about five months ago, and I haven't seen him because he has been on the run from the police." (A29:7-12.)

On April 9, 2003, Petitioner appeared for sentencing on the original charges. In light of his statements to probation, his failure to appear at his initial sentencing, and his subsequent arrest, the judge informed Petitioner that "it would appear to the Court that .... you appear to be

clearly in violation of the plea agreement." (A26:2-15.)

Defense counsel informed the court that the complainant in the March arrest wanted to drop the charges because there had simply been a "misunderstanding[3]." (A26:17-A27:6.) Defense counsel further explained that Petitioner had failed to appear for his initial sentencing because the complainant had suffered a miscarriage "and Mr. Hill was confronted between his legal obligation to this Court and what he felt were his moral and familial obligations ... He made a choice. It was a wrong choice, but I do not believe it is one for which there should be meted out anything additional punitively." (A27:21-A28:1.)

The court found that the complainant's statement to the police in March that she had not seen Petitioner for "about five months" was inconsistent with Petitioner's story that he failed to appear at his sentencing due to the complainant's miscarriage. (A29:14-18.) The court stated:

> Based on all of the information that the Court has available to it, specifically the failure of the defendant to return here for sentencing in December[4], the statements made to the Probation Department in violation of the Court's instructions ... and the new arrests ... the Court finds that the defendant has violated the plea agreement and that the issue of sentencing is reopened, and that the Court can consider and sentence the defendant outside the plea agreement and in accordance with statute, and the plea agreement included ... five years post-release supervision because of the defendant's prior ... felony conviction[5].

---

[3]   Petitioner asserts that "[a]ll charges regarding this new arrest were dismissed." (Dkt. No. 1 at 5.)

[4]   It is not clear from the record before this Court why Petitioner's sentencing hearing was moved from November 26, 2002, to a date in December 2002.

[5]   Petitioner admitted that he had been convicted of a felony in the Northern District of New York on April 30, 1998, and sentenced to 37 months in the United States Bureau of Prisons. (A30:21-A31:6.)

4

(A29:19-A30:13.)

Petitioner, without being sworn, was then given an opportunity to address the court. (A31:11-15.) He said that on the date of his March arrest, he had come to town to turn himself in without telling the complainant. When he got to the house, he came through the back door "and I assume that she called the police because she was afraid." (A31:21-A32:1.) He said that what he did was not burglary because "I can't burglarize a place that I live in." (A31:20-21.) He stated that he resisted arrest because "they had sicced a dog on me." (A31:19-20.)

After hearing from Petitioner, the court sentenced him to a determinate sentence of five years of imprisonment followed by a period of five years of post-release supervision. (A32:16-19.)

Petitioner appealed. On appeal, he argued that the trial court committed reversible error by failing to conduct a sufficient inquiry or giving him an opportunity to withdraw his plea before enhancing his plea bargain sentence. He also argued that his sentence was unduly harsh. (Appellant's Brief.)

The Third Department affirmed the trial court. *People v. Hill*, 794 N.Y.S.2d 690 (N.Y. App. Div. 2005). Citing *People v. Outley*, 80 N.Y.2d 702 (1993), the appellate court found that the "County Court's inquiry was sufficient to establish a legitimate basis for the postplea arrest which, in addition to [Petitioner's] failure to appear for the scheduled sentencing, provided an independent, legally valid basis for the enhanced sentence." *Hill*, 794 N.Y.S.2d at 691.

Petitioner applied for leave to appeal to the New York Court of Appeals. Leave to appeal was denied on June 28, 2005. *People v. Hill*, 5 N.Y.3d 763 (2005).

Petitioner did not pursue any state collateral proceedings.

Petitioner filed his petition for writ of *habeas corpus* in this Court on September 26, 2005. (Dkt. No. 1.) Respondent filed an opposition brief. (Dkt. No. 6.)

**IV.   DISCUSSION**

    A.   <u>Whether the trial court's inquiry into Petitioner's violation of the plea agreement satisfied due process</u>

        1.   *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir.2001). This is so, "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id*. at 312. To determine whether a state court has adjudicated a claim "on the merits," a federal *habeas* court must examine three "clues" to classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law[6]. *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). "Absent a clear and express statement of

---

[6] The three "clues" to the basis of a state court's decision are (1) the face of the state-court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances. *Jimenez*, 458 F.3d at 145, n. 16.

6

reliance on a state procedural bar," decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

Here, an examination of the three "clues" establishes that the Third Department addressed Petitioner's claim regarding the increase of his bargained-for sentence "on the merits." Therefore, the AEDPA standard applies and this Court must determine whether the state court's decisions were "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).

A decision "on the merits" is "contrary to ... clearly established federal law" when it is "either contrary to Supreme Court precedent on a question of law or ... opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." *Johnson v. West*, No. 9:04-cv-751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007), *quoting Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). "Clearly established federal law" means "the holdings, as opposed to the dicta" of United States Supreme Court decisions. *Carey v. Musladin*, 549 U.S. 70 (2006); *Yarborough v. Alvarado*, 541 U.S. 652, 660-661 (2004). A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner (*Johnson v. West*, 2007 WL 952058 at *2 (*quoting Lockyer v. Andrade*, 538 U.S. 63, 75 (2003))) or identifies the correct governing legal principle from the Supreme Court's decisions but "unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Although "[s]ome increment of incorrectness beyond error is required" in order to

7

grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006). The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1) (2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

Petitioner asserts that the trial court's inquiry into whether he violated the conditions of his plea agreement was insufficient to satisfy due process. Under clearly established federal law, "the sentencing process ... must satisfy the requirements of the Due Process Clause." *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (Stevens, J. joined by Stewart, J. and Powell, J[7].). The Supreme Court has also noted that "fair play" requires that a sentence following a plea of guilty not be "predicated on misinformation or misreading of court records." *Townsend v. Burke*, 334 U.S. 736, 741 (1948). It is thus "clear that some process is due to a defendant who challenges information to be used against him in sentencing, but the Supreme Court has not specifically delineated the scope of the inquiry a sentencing court must conduct." *Janick v. Superintendent*, 404 F. Supp. 2d 472, 482 (W.D.N.Y. 2005). In fact, the Supreme Court has expressly declined to "constitutionaliz[e] burdens of proof at sentencing" and noted that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all."

---

[7] The Chief Justice, Justice White, and Justice Blackmun concurred in the judgment but did not join in Justice Stevens' opinion.

*McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986) (finding constitutional a provision of Pennsylvania's Mandatory Minimum Sentencing Act that imposed a mandatory minimum sentence of five years if the sentencing judge found by a preponderance of the evidence that a defendant "visibly possessed a firearm" during the commission of an offense, and rejecting the claim that "due process ... requires that visible possession be proved by at least clear and convincing evidence").

New York state courts apply the standard originally set out in *People v. Outley*, 80 N.Y.2d 702 (1993.)  In that case, the New York Court of Appeals addressed "the minimum requirements of due process when ... the defendant has breached a no-arrest condition by being arrested before the sentence but denies any complicity in the underlying crime." *Id.* at 712.  The facts in *Outley* were remarkably similar to Petitioner's situation.  Outley pleaded guilty to endangering the welfare of a child.  The trial court agreed to sentence Outley to a period of probation, subject to a no-arrest clause.  *Id*. at 707-708.  When Outley appeared for sentencing, the court learned that, since the plea was entered,  he had been arrested for violating a court order directing him to stay away from his wife, daughter, and their residence. Outley explained to the court that he had stopped by the house to pick up some papers.  He said he had talked to his wife before doing so.  His wife, however, had signed a sworn affidavit attesting to the allegations in the criminal contempt complaint.  The trial court, after hearing from Outley, increased the plea bargain sentence to one year in jail.  *Id.* at 708-709.  Outley appealed, arguing that due process requires a sentencing court to "conduct an evidentiary hearing to satisfy itself by a preponderance of the evidence that the defendant has, in fact, committed the crime for which he was arrested." *Id.* at 712.  The Court of Appeals rejected that argument, noting that "[n]othing in the decisions

of our State courts *or of the Federal courts* calls for such an onerous rule." *Id*. (emphasis added). Rather, the court held, due process requires only that the sentencing court's inquiry "be of sufficient depth ... so that the court can be satisfied - not of defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." *Id*. at 713. The Court of Appeals found that Outley's sentencing court satisfied this standard because Outley was "permitted to explain the circumstances of the visit to his home in an effort to demonstrate that [he] had no intent to defy the courts' authority. We cannot say ... that the sentencing court ... erred in holding, from the fact that [Outley's] wife had signed the complaining affidavit, that there was a legitimate foundation for the contempt charge." *Id.* at 713-714. The *Outley* "legitimate foundation" test has been routinely applied by New York sentencing courts in the years since 1993. *See e.g. People v. Rose*, ___ N.Y.S.2d ___, 2008 WL 1930792 (N.Y. Sup. Ct. Apr. 30, 2008).

Despite the lack of precedent from the United States Supreme Court regarding the burden of proof required at sentencing to satisfy due process, the Second Circuit has held that hearings conducted to determine whether a criminal defendant has violated the terms of a no-arrest clause must satisfy a preponderance of the evidence standard. *Torres v. Berbary*, 340 F.3d 63 (2d Cir. 2003). *Torres* came before the Second Circuit on Torres' petition for a writ of *habeas corpus* following his conviction and imprisonment for a drug offense. Torres had pleaded guilty in exchange for a sentence of conditional release to a drug treatment facility. The condition was that if he did not "work out" at the program, he would be sentenced to "at least four and half to nine years in jail." *Torres*, 340 F.3d at 64. Less than a month later, Torres was discharged from the drug treatment program. In a letter to the sentencing court, the facility explained that:

> New residents overheard conversations conducted in [S]panish between this client and other residents claiming that they could make illicit drugs available for sale within this facility. It is suspected that the drugs may have been entering the facility through the use of church trips. Confederates may have met clients at church to pass drugs or money. Also, it is suspected that gang activity in the form of meetings on the male floor and the use of gang hand signals have involved the above-named client. Although we have been unable to obtain physical evidence, we have received information from residents that clearly implicates this individual in an organized attempt to sell drugs in this facility.

*Id.* at 65. At the sentencing hearing, defense counsel repeatedly informed the judge of "Torres' adamant assertion that he did not bring drugs" into the drug treatment program. *Id*. at 66. Counsel requested an evidentiary hearing, which the court declined to conduct. Torres requested an opportunity to speak, which the court granted. Torres, unsworn, told the judge that he had not done anything wrong. Immediately thereafter, the court sentenced him to four and a half to nine years in prison. *Id.*

Torres' conviction was affirmed on direct appeal. He filed a *habeas* petition, arguing that "his due process rights were violated because he was denied an evidentiary hearing." *Id.* at 67. The District Court denied the petition, finding that the state court's decision was not contrary to clearly established federal law. The Second Circuit reversed.

The Second Circuit began its analysis by citing *McMillan, supra,* for the proposition that the United States Supreme Court "has clearly spoken on the question of the standard of proof of facts in sentencing in relation to the constitutional requirement of due process, holding that the preponderance of evidence standard satisfied the requirement." *Torres*, 340 F.3d at 69. Accordingly, the Second Circuit found that "due process in sentencing requires *at least* a showing by a preponderance of the evidence to resolve disputed factual issues." *Id.* at 71

11

(emphasis added). The Second Circuit found that the procedure the trial court followed when sentencing Torres did not comply with that standard. *Id.* at 70. The Second Circuit was particularly troubled by the

> total reliance by the trial court on a hearsay report that itself contains only uncorroborated statements of unnamed informants; omission of any finding by the trial court as to the reliability of the informants or as to the reasons for the non-disclosure of their identities; failure of the trial court to conduct some kind of hearing, including provision for the examination of Torres under oath; lack of preponderating evidence of Torres' wrongdoing; and the gross disparity between a sentence that would release Torres to society on a plea to a misdemeanor charge after completion of the [drug treatment] program and the four-and-and-half-to-nine-year felony sentence to state prison that he received for violating the original sentence condition.

*Id*. at 72. The Second Circuit thus reversed the District Court, concluding that "[w]e *think* that well-settled and clearly established Supreme Court due process jurisprudence or, *at the very least, a reasonable extension of it*, mandates a finding of denial of due process in Torres' sentencing." *Id*. (emphasis added).

*Torres* has been criticized by District Courts within New York. *See Coleman v. Rick*, 281 F. Supp. 2d 549 (E.D.N.Y. 2003); *Janick v. Superintendent*, 404 F. Supp. 2d 472 (W.D.N.Y. 2005). In *Coleman*, the court characterized the Second Circuit's "logical leap" from its "obviously correct" observation that "the Supreme Court ha[s] clearly established that a preponderance of the evidence standard satisfies the constitutional requirement of due process" to its conclusion "that the Due Process Clause requires *at least* application of a preponderance standard for determination of sentencing facts" as "odd." *Id.* at 560 (emphasis in original). The court noted that the Second Circuit's

> conclusion is unfounded in the logic of the court's opinion, which

12

> takes a "sufficient" condition (the preponderance standard satisfies due process) and treats it as a "necessary" condition (due process requires at least a preponderance standard). The court's conclusion is ... unsupported by Supreme Court precedent. To the contrary, the Supreme Court in *McMillan* observed that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all."

*Id.* (quoting *McMillan*, 477 U.S. at 91).

In *Janick*, the district court acknowledged that *Torres* imposed a preponderance of the evidence standard but added "[w]ith all due respect to the Second Circuit, I must agree with [the *Coleman* judge's] observation that this conclusion is 'unfounded in the logic of the court's opinion, which takes a sufficient condition (the preponderance standard satisfied due process) and treats it as a necessary condition (due process requires at least a preponderance standard).'" *Id.* at 484. "Without conceding that a preponderance standard is required," the court found that the hearing Janick received met the standard and denied the petition for writ of *habeas corpus*. *Id.* at 487. The district court granted Janick a certificate of appealability "on his claim that ... the court erred in applying only the 'legitimate basis' standard of proof." *Id.* at 488.

Pursuant to the certificate of appealability, Janick appealed to the Second Circuit. In a decision not selected for publication in the Federal Reporter, even the Second Circuit seemed to acknowledge that the *Torres* preponderance of the evidence standard is not based on "clearly established federal law." *Janick v. Superintendent*, No. 05-7046-pr, 253 F.App'x 65 (2d Cir. 2007). The opinion did not squarely address the issue of the *Outley* "legitimate basis" burden of proof versus the preponderance of the evidence burden discussed in *Torres*. However, the opinion stated that "Supreme Court precedent ... does not shed much light on the minimum burden of proof that must be met when factual contentions are subject to dispute at sentencing ...

13

Nevertheless, to the extent that this Court has stated that 'due process in sentencing requires at least a showing by a preponderance of evidence,' Janick received sufficient process in his state court proceeding." *Id.* at 66 (citing *Torres*, 340 F.3d at 71).

Another District Court within New York has downplayed the extent of the *Torres* holding, characterizing it as requiring only that the trial court should have a "reasonable basis" for finding that a condition of a plea agreement has been breached. *Lopez v. Sanders*, 302 F. Supp. 2d 241 (S.D.N.Y. 2004). In *Lopez*, the district court noted that although clearly established federal law holds that a petitioner's "right to enforce his plea agreement ... is certainly a Fourteenth Amendment liberty interest, whose termination calls for some orderly process, however informal under the Due Process clause," the petitioner before it had cited "no Supreme Court case (nor could the Court find one) holding that, under the Due Process Clause, disputed factual issues regarding plea agreement compliance must be resolved in a full-blown hearing." *Id.* at 246. The court characterized *Torres* as holding not that a preponderance of the evidence standard was required, but merely that "a re-sentencing proceeding failed the due process test" due to the "unique facts of the case" (in particular, the "single report replete with multiple layers of hearsay and speculation"). *Id.* at 247. The court distinguished the case before it from *Torres* on the basis that in the case before it "the trial court *did* have a *reasonable basis* to determine that Lopez had violated his plea agreement." *Id.* (emphasis on "reasonable basis" added).

Here, whether weighed under the *Outley* "legitimate basis" standard, the *Torres* preponderance of the evidence standard, or the *Lopez* "reasonable basis" standard, the trial court conducted a sufficient inquiry into Petitioner's alleged violation of the plea agreement to satisfy due process. Petitioner's denial of guilt to the probation office after admitting to guilt on the

14

record in open court violated his agreement to answer questions truthfully. As evidence of this violation, the trial court had before it the probation department's report as well as a transcript and the judge's own memory of Petitioner's in-court statements. The trial court's own records and the judge's own memory were evidence that Petitioner failed to appear for sentencing as promised. Finally, as evidence of the basis for Petitioner's arrest, the trial court had before it the accusatory instruments from Troy City Court, including the complainant's sworn statement. Even in light of Petitioner's denials of guilt of the newly accused crimes and explanation for his failure to appear at sentencing, the trial court had sufficient evidence to find by a preponderance of the evidence that Petitioner had violated the terms of his plea agreement. Therefore, Petitioner is not entitled to *habeas* relief on this ground.

      B.     <u>Whether the imposition of five years of supervised release was illegal</u>

Petitioner argues that the portion of his sentence imposing five years of post-release supervision is illegal because "[t]he statute is clear for first violent felony offenders, the sentence imposed should have been three years." (Dkt. No. 1 at 5.) Respondent argues that the claim is unexhausted and without merit. (Dkt. No. 6 at 19-22.) Respondent is correct.

In order to be eligible for *habeas* relief, a petitioner's federal constitutional claim must have been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This is to ensure that the state is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Id*. In order to give state courts this opportunity, a

> litigant wishing to raise a federal issue can easily indicate the federal law basis for his claims in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies, or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  *Habeas corpus* petitioners bear the burden of demonstrating that they have exhausted available state remedies.  *Cruz v. Artuz*, Civ. No. 97-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998); *United States ex rel. Cuomo v. Fay*, 257 F.2d 438, 442 (2d Cir. 1958)); *see also Ruine v. Walsh*, Civ. No. 00-3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing *Colon*, 19 F. Supp. 2d at 119-20).

Petitioner did not exhaust his claim regarding the alleged illegality of the length of the term of post-release supervision.  Indeed, Petitioner conceded on direct appeal that he was "a second felony offender," that the "court sentenced [him] to five years determinate with five years post release supervision" and that "[s]uch sentence is legal and authorized."  (Appellant's Brief at 9-10.)

Petitioner's unexhausted claim is not procedurally barred in the state courts because he could still file collateral proceedings to challenge his sentence.  There is no time limit within which an individual must bring a motion in state court pursuant to New York Criminal Procedure law section 440.10.  The statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment." N.Y. Crim. Proc. Law § 440.10(1) (McKinney 2008).  Because the claim is not procedurally barred, this Court cannot "deem" it exhausted.

The *habeas* statute provides, however, that an application for *habeas corpus* may be denied on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).  Although the Second Circuit has not specifically articulated a standard, lower courts have discussed two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to exhaust. *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 n.4

(W.D.N.Y. 2007)(citing cases).

A majority of lower courts use the "patently frivolous" standard, while a minority of courts use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Id.* (citing *inter alia Naranjo v. Fillion*, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, *30 (S.D.N.Y. April 16, 2003)(patently frivolous standard); *Basnight v. Keane*, 99-CV-5907, 2001 U.S. Dist. LEXIS 11155, *14-15 & n.1 (E.D.N.Y. July 31, 2001)(non-meritorious standard)). In finding that a "non-meritorious" standard applied, the court in *Basnight* cited the Supreme Court decision in *Duncan v. Walker*, 533 U.S. 167, 183 (2001). In *dicta* from *Duncan* the Supreme Court stated that "the AEDPA gives a district court the alternative of simply denying a petition containing ***unexhausted but nonmeritorious claims***." *Id.* (emphasis added). In this case, the Court finds that Petitioner's claim may be dismissed on the merits under either standard, notwithstanding Petitioner's failure to exhaust the claim in the state courts.

Clearly established federal law holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992)(holding that a state prisoner who was sentenced within the limits of the state law does not present a federal constitutional issue for habeas purposes) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.1989)); *see also Jackson v. Lacy*, 74 F. Supp. 2d 173, 181 (N.D.N.Y.1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").

Petitioner's sentence of five years' imprisonment followed by five years of post-release

17

supervision is within the range prescribed by New York state law.  Petitioner was convicted of assault in the second degree, a class D violent felony offense.  N.Y. Penal Law §§ 70.02(1) (c) and 120.05 (McKinney 2008).  Due to his admitted prior federal felony conviction, Petitioner was a second felony offender.  N.Y. Penal Law § 70.06 (McKinney 2008).  As a second felony offender convicted of a class D violent felony offense, Petitioner could be sentenced to a determinate sentence of between three and seven years.  N.Y. Penal Law § 70.06(6)(c) (McKinney 2008).  Because Petitioner was a second felony offender convicted of a class D violent felony offense and sentenced pursuant to Penal Law § 70.06, the trial court was required to impose a term of five years of post-release supervision.  N.Y.Penal Law § 70.45(2) (McKinney 2008).  Therefore, Petitioner's claim should be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**.  Furthermore, I find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).  Therefore, I recommend that no certificate of appealability issue with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 20, 2008
      Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge